# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **BEN POURBABAI,**<br>**9896 Sunnybrook Drive**<br>**Great Falls, VA 22066** | ) | |
| **v.** | ) | No. 08-262 C<br>Judge Wiese |
| **THE UNITED STATES** | ) | |

## FIRST AMENDED COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND BREACH OF CONTRACT

Comes now Plaintiff, Ben Pourbabai ("Plaintiff" or "Pourbabai"), by and through counsel, for his Complaint against Defendant, Maria Cino, Acting Secretary of the United States Department of Transportation ("DOT" or "Defendant"), United States Attorney Alberto

Gonzalez and Kenneth L. Wainsten, the United States Attorney for the District of Columbia (collectively, "Defendants") and states as follows:

**PARTIES**

1. Plaintiff, Ben Pourbabai, is of Iranian descent. Dr. Pourbabai is a resident of the Commonwealth of Virginia. On or about August 15, 1996, Dr. Pourbabai became employed with the Federal Aviation Administration ("FAA" or "Agency") DOT as a Chief Scientific and Technical Advisor for Manufacturing and Quality Assurance Technology ("Advisor").

2. Defendant, the DOT, is a federal government agency with its principal place of business in the District of Columbia.

**NATURE OF ACTION**

3. This is an action for employment discrimination and breach of contract based on acts of race/national origin discrimination and reprisal by Defendant. The acts complained of are in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.*, as amended by the Equal Opportunity Act of 1972, 42 U.S.C. §2000e-16 *et seq.*, and as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a (collectively, "Title VII").

**JURISDICTION AND VENUE**

4. The Court has subject matter jurisdiction over this action pursuant 28 U.S.C. §1332 (2005) as the amount in controversy exceeds seventy five thousand dollars ($75,000.00) and diversity of citizenship exists between the parties.

5. The Court has jurisdiction over this matter and Defendant pursuant to 28 U.S.C. §1391 (2005).

6. Venue properly lies in this judicial district pursuant to 28 U.S.C. §1391(b) because all of the actions complained of herein took place in the District of Columbia within the jurisdiction of the United States District Court for the District of Columbia.

7. Defendant's Complaint is also filed after the exhaustion of the administrative process as set forth in 29 C.F.R. §1614 *et seq.*

**PROCEDURAL HISTORY**

8. On or about November 11, 1998 Dr. Pourbabai filed his first EEO Complaint, Case No. DOT 2-99-2074 with the FAA's Office of Civil Rights ("OCR"). This case was subsequently forwarded to the DOT's OCR.

9. Dr. Pourbabai filed four additional complaints with the OCR on March 14, 1999, August 19, 1999, November 16, 1999 and July 12, 2000 noting various acts of reprisal and discrimination and harassment than those previously filed.

10. On or about August 21, 2000, Dr. Pourbabai filed a complaint of prohibited employment practices with the U.S. Office of Special Counsel's ("OSC") Complaint Examining Unit ("CEU"). This case was docketed as case number MA-00-2349. Simultaneously, Dr. Pourbabai filed a whistleblower action with the OSC's Disclosure Unit ("DU"), docketed as case number DI-00-2350.

11. On June 27, 2001, Dr. Pourbabai and the FAA entered into a Stipulation of Settlement ("Stipulation", "Settlement" or "Agreement'), providing that "all formal and informal administrative complaints of discrimination filed by Ben Pourbabai prior to the date of execution of this stipulation, including DOT 2-99-2074, 2-00-2003 and 2-00-2004 (the Complaints), and his Individual Right of Action appeal (MSPB Docket No. DC-1221-01-0552-W-1) shall be settled."

12. After execution of the Stipulation of Settlement and as a result of actions by the Defendant which occurred subsequent to the execution of the Agreement, Dr. Pourbabai filed another complaint with the Agency, Agency No. 2022081, alleging discrimination on the basis of national origin and in reprisal for discrimination against him because he opposed certain employment practices and made charges and participated in a Title VII investigations and proceedings against Defendant.

13. On July 29, 2004, the Agency issued its final decision. Plaintiff filed a timely appeal with the U.S. Equal Employment Opportunity Commission (the "Commission") pursuant to 29 C.F.R. §1614.405(a).

14. Almost two years later, the Commission issued its decision to the appeal on May 12, 2006, Appeal No. 01A46164.

15. Plaintiff has timely filed this action with this Court within ninety (90) days of receipt of the Commission's decision.

**FACTS**

16. On or about August 15, 1996, Plaintiff joined the DOT FAA as the Chief Scientific and Technical Advisor for Manufacturing and Quality Assurance with the Aircraft Certification Service. Dr. Pourbabai worked at the DOT FAA until his untimely departure on or about December 30, 2002.

17. At all times relevant to this Complaint, Plaintiff was employed by Defendant.

18. On June 23, 2001, Mr. Pourbabai entered into an Agreement with the Agency. [See Settlement Agreement attached hereto as Exhibit 1 and incorporated herein by referenced].

19. The Settlement was an agreement by and between Dr. Pourbabai and the Agency whereby "all formal and informal administrative complaints of discrimination filed by Ben

Pourbabai ***prior to the date of execution of this stipulation***, including DOT 2-99-2074, 2-00-2003 and 2-00-2004 (the Complaints), and his Individual Right of Action appeal (MSPB Docket No. DC-1221-01-0552-W-1)" were settled. (Emphasis supplied).

20. The Agreement provided in relevant part:

a. Complainant shall continue to encumber the position of Chief Scientific and Technical Advisor for Manufacturing and Quality Assurance Technology (the Position), and perform the duties described in the job description for the position ***without intimidation or harassment*** until December 30, 2001. Until that date, Complainant shall focus solely on research and development projects, and ***will continue to have access to his phone, mail, computer, and other resources at the FAA.*** It is further agreed that, during this period, Complainant's resource requests shall be addressed by Cindy Soffee, the NRS program manager. [See Settlement at ¶1] (Emphasis Supplied);

b. Effective December 30, 2001, or sooner if requested in writing by Complainant, he shall be ***voluntarily*** separated from the Federal Aviation Administration (FAA). The FAA documents effecting this separation shall affirmatively indicate in the remarks section that the sole reason for the Complainant's departure form the FAA is his desire to assume more challenging executive responsibilities. [Id. at 2] (Emphasis Supplied);

c. On January 2, 2002, Complainant shall receive a payment in the amount of $300,000 payable to Ben Pourbabai and Michael J. Kantor. [Id. at 3].

d. The FAA will purge its records of any performance evaluations and documents critical of Complainant, excluding those documents contained in agency counsel's case file and the agency's Reports of Investigation. [Id. at 4].

e. Complainant shall identify James Whitlow, Deputy Chief Counsel, as the agency contact point if he wishes to have a future reference from the FAA. Mr. Whitlow shall use the attached reference letter, with proper salutation and date, if he is asked by any individual or organization to either comment or produce a letter of reference regarding the performance of the Complainant. ***Mr. Whitlow, on behalf of the agency, will execute Complainant's self-appraisal for 2001, noting that he***

> ***met expectations. That appraisal will be made immediately available to Complainant.*** [Id. at ¶5] (Emphasis Supplied);
>
> f. It is expressly understood by the parties that the letter of reference stands as the sole and official position of the FAA with respect to the Complainant's employment. To that end, agency counsel shall inform relevant FAA officials in the offices of the Associate Administrator for Regulation and Certification and the Associate Administrator for Human Resource Management in writing that if FAA is contacted regarding the Complainant's employment with the FAA or background, that employee should refer the inquiry to Mr. Whitlow, or his successor.

21. In exchange for the above, Plaintiff agreed to waive any and all claims against the United States government and any agency thereof.

22. Furthermore, paragraph 10 of the Settlement Agreement provided in relevant part:

> The Complaints are voluntarily settled pursuant to 29 CFR Sections 1614.504 and 1614.603 in accordance with the above terms and conditions. If Complainant believes the agency has failed to comply with the terms of this settlement agreement (i.e. confidentiality of this agreement being compromised), he may, in compliance with 29 CFR 1614.504, request either the terms of the settlement agreement be specifically implemented or that the complaint be reinstated for further processing from the point processing ceased.

23. Almost immediately after execution of the agreement, during the period of June 27, 2001 – December 18, 2001, Dr. Pourbabai was subjected to prohibited employment practices that were in addition to those which were dismissed as a result of the Stipulation of Settlement.

24. Indeed, these various prohibited employment practices occurred subsequent to the execution of the Settlement Agreement on June 23, 2001.

**VIOLATIONS OF ¶ 5 OF THE STIPULATION OF SETTLEMENT**

25. For example, on or about October 22, 2001, Dr. Pourbabai submitted his self-appraisal for the period of October 1, 2000 until September 30, 2001 to Ms Cindy Soffe, the NRS program manager for the Chief Scientific and Technical Advisors.

26. Pursuant to paragraph 5 of the Settlement, James Whitlow, Deputy Chief Counsel, was to execute Dr. Pourbabai's self-appraisal for 2001, noting that he met expectations.

27. Upon information and belief, Mr. Whitlow has never executed the self appraisal provided by Dr. Pourbabai for 2001.

28. Moreover, pursuant to paragraph 5 of the Agreement, Mr. Whitlow was to "use the attached reference letter, with proper salutation and date, if he is asked by any individual or organization to either comment or produce a letter of reference regarding the performance of" Dr. Pourbabai.

29. Upon information and belief, it is the practice of the agency to execute self-appraisals as written by the employee.

30. Dr. Pourbabai's appraisal was not executed in the manner agreed to be the parties and in the same fashion as his colleagues.

## VIOLATIONS OF ¶ 1 OF THE STIPULATION OF SETTLEMENT

31. In June 2001, Dr. Pourbabai requested that his government issued computer be replaced as a result of a damaged hard drive.

32. Dr. Pourbabai's request for a replacement of his damaged computer was approved in June 2001, approximately one week before the stipulation of settlement was signed.

33. Despite the approval of his request, and after repeated requests, Dr. Pourbabai never received a comparable computer replacement.

34. Upon information and belief, the Agency was in possession of a number of computers with compatible operating systems that could have been issued to Dr. Pourbabai.

35. Rather, Dr. Pourbabai received an incompatible computer system which prohibited him from accessing the Agency's operating system, computer resources, software and electronic mailing system.

36. Upon information and belief, Dr. Pourbabai was the only Advisor who was not provided with a computer giving access to the Agency's main frame system.

37. Pursuant to paragraph 1 of the Agreement, Dr. Pourbabai was to have continued "access to his phone, mail, computer and other resources at the FAA."

38. The agency's failure to provide Dr. Pourbabai with a computer comparable to that which was in his possession originally and which permitted access to the agency's operating system infringed upon Dr. Pourbabai's ability to "continue to encumber the position of Chief Scientific and Technical Advisor for Manufacturing and Quality Assurance Technology" and perform his duties thereunder.

39. Similarly, the Agency failed to allocate financial resources so that Dr. Pourbabai could "continue to encumber the position of Chief Scientific and Technical Advisor for Manufacturing and Quality Assurance Technology (the Position), and perform the duties described in the job description for the position until December 30, 2001."

40. Specifically, Dr. Pourbabai made repeated requests for additional resources so that he could perform his official duties including, but not limited to, funds for highly specialized training in advanced scientific sub-disciplines, scientific literature, and membership dues in the relevant scientific organizations.

41. Such resources were necessary so that Dr. Pourbabai could perform his research and development tasks and other obligations as set forth under his job description.

42. Indeed, such expenditures were previously paid for.

43. Moreover, such expenditures were being paid for by the Agency for other employees who were employed as an Advisor or in a similar capacity as Dr. Pourbabai.

44. Pursuant to paragraph 1 of the Agreement, Dr. Pourbabai was to perform the duties described in his job description including research and development as well as have access to his phone, mail, computer and other resources at the FAA.

45. Dr. Pourbabai was not provided with all of the necessary resources needed to perform his duties or allotted to him as detailed in his job description and as indicated under the Agreement.

46. Furthermore, on November 5, 2001, Dr. Pourbabai was scheduled to take a flight from Dulles Airport in Dulles, Virginia to Cairo, Egypt to attend a conference sponsored by the North Atlantic Treaty Organization ("NATO").

47. Upon his arrival at the gate, Dr. Pourbabai was detained for hours by airport security and police.

48. Dr. Pourbabai was informed he was being detained so that his official documents could be "authenticated."

49. Dr. Pourbabai was traveling with a number of official U.S. government-issued identification including his government-issued FAA identification card, a passport, his Virginia driver's license, as well as official traveling orders and invitation to the NATO conference.

50. After over six hours, the documents were finally "authenticated", and Dr. Pourbabai was released.

51. As a result of the delay, Dr. Pourbabai missed his scheduled flight and arrived to the NATO conference later than originally scheduled.

52. Moreover, the sequence of events which transpired at the airport left Dr. Pourbabai humiliated, stressed, fearful and upset as a result.

53. Upon information and belief, Dr. Pourbabai was intentionally targeted and harassed at the airport.

54. Upon Dr. Pourbabai's return from Egypt, Dr. Pourbabai submitted for reimbursement his original receipts and traveling voucher in the amount of $ 2,225.67.

55. Despite Dr. Pourbabai's traveling voucher and relevant documents being approved and processed the agency failed to reimburse Dr. Pourbabai for his trip to Egypt.

56. On or about December 3, 2001, Dr. Pourbabai inquired with Ms. Soffe regarding the new proposed pay system and salary structure.

57. Under the new system, each executive, including Dr. Pourbabai, was allowed to accumulate only 200 hours of annual leave and any additional leave would be forfeited if it was not used.

58. Moreover, under the new system, Dr. Pourbabai's salary's cap increased for his pay level from $133,477.00 to $140,700.00.

59. Upon information and belief the new pay increase was to be retroactive and provided to all Advisors, including Dr. Pourbabai.

60. Dr. Pourbabai was informed that he could request to use his annual leave in excess of the allotted 200 hours for the following year by submitting a form and indicating the reason as to why Dr. Pourbabai was unable to use his annual leave due to his existing workload.

61. Upon information and belief, such a request was routine and regularly granted on the same basis for Dr. Pourbabai's colleagues.

62. The agency failed to address his request and provide him with the same treatment provided to others which ultimately resulted in Dr. Pourbabai being unable to carry-over his annual leave in excess of 200 hours to the following year.

**VIOLATIONS OF ¶ 3 OF THE STIPULATION OF SETTLEMENT**

63. Also, pursuant to paragraph 3 of the Settlement Dr. Pourbabai was to receive a payment in the amount of $300,000.00 from the Defendant made payable to Plaintiff and his then attorney

64. Moreover, Plaintiff was to receive an addition $15,000.00 in attorney's fees for a total payment of $315,000.00.

65. Dr. Pourbabai specifically negotiated to have such check received on January 2, 2002.

66. However, on December 17, 2001, Defendant sent a check in the amount of $315,000.00 to Plaintiff's then attorney.

67. Defendants failed to comply with the January 2, 2002 issuance date which Plaintiff expressly negotiated for and to which Defendant agreed.

68. Accordingly, Plaintiff never cashed the check as it was not in compliance with the Agreement and returned it to Defendant

69. To date, Plaintiff has never received $300,000.00 from Defendant on (or after) January 2, 2002 as agreed to by the parties and as set forth under the Agreement.

**DAMAGES**

70. As a direct result of the events complained of, Plaintiff has suffered both pecuniary and non-pecuniary losses, including:

a. Failure to receive the proper pay and pay grade due to the Agency's discriminatory failure to properly classify Plaintiff's job;

b. Failure to reimburse Plaintiff for travel related pre-approved expenditures;

c. Due to the discriminatory and retaliatory hostile environment to which Plaintiff was subjected, Plaintiff has suffered great emotional pain and suffering, including distress, humiliation and work related stress and anxiety.

d. Plaintiff has been subjected to intimidation and harassment.

e. Defendant's actions have enabled Plaintiff to secure employment.

## COUNT I – VIOLATION OF STIPULATION OF SETTLEMENT/BREACH OF CONTRACT

71. Plaintiff realleges paragraph 1 through 72 as though fully set forth herein.

72. Plaintiff and Defendant entered into a Contract known as a Stipulation of Settlement for purposes of settling certain EEO complaints by Plaintiff.

73. Despite both parties negotiating and agreeing upon specific terms in the 15 paragraph Settlement, almost immediately upon execution of the Agreement, Defendant failed to adhere to a number of the paragraphs of the 15 paragraph Agreement.

74. Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully violated and breached the Stipulation of Settlement entered into on June 23, 2001 when it failed to fully comply -- in some instances on more than one occasion -- with paragraphs 1, 2, 3, 5, 10 and 15 of the Stipulation.

75. As a result of Defendant's actions, Plaintiff suffered damages, including but not limited to, those described in ¶ 70 above.

**COUNT II – DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION OF TITLE VII**

76. Plaintiff realleges paragraph 1 through 75 as though fully set forth herein.

77. Plaintiff alleges that Defendant harassed and participated in adverse employment actions on the basis of Plaintiff's national origin.

78. As a result of Defendant's actions, Plaintiff suffered damages, including but not limited to, those described in ¶ 70 above.

**COUNT III – DISCRIMINATION ON THE BASIS OF REPRISAL IN VIOLATION OF TITLE VII**

79. Plaintiff realleges paragraph 1 through 78 as though fully set forth herein.

80. Plaintiff alleges that Defendant willfully, intentionally, maliciously, and unlawfully discriminated against Plaintiff on account of his prior EEO activity and raising EEO issues with the Agency and Commission by creating, maintaining and subjecting Plaintiff to harassment and a continuous hostile work environment.

81. As a result of Defendant's actions, Plaintiff suffered damages, including but not limited to, those described in ¶ 70 above.

**COUNT IV – DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION OF TITLE VII: FAILURE TO PROPERLY COMPENSATE PLAINTIFF**

82. Plaintiff realleges paragraph 1 through 81 as though fully set forth herein.

83. Plaintiff alleges that Defendant, willfully, intentionally, maliciously and unlawfully discriminated against him on account of his national origin, Iranian, by failing to properly compensate him for the duties that he was actually performing.

84. Other similarly situated individuals who were not Iranian had their compensation for their position adjusted.

85. As a result of Defendant's actions, Plaintiff suffered damages, including but not limited to, those described in ¶ 70 above.

**COUNT V – DISCRIMINATION ON THE BASIS OF REPRISAL IN VIOLATION OF TITLE VII: FAILURE TO PROPERLY COMPENSATE PLAINTIFF**

86. Plaintiff realleges paragraph 1 through 85 as though fully set forth herein.

87. Plaintiff alleges that Defendant willfully, intentionally, maliciously, and unlawfully failed to properly compensate Plaintiff because of his prior EEO activity and raising EEO issues with the Agency and Commission.

88. As a result of Defendant's actions, Plaintiff suffered damages, including but not limited to, those described in ¶ 70 above.

**COUNT VI - FALSE ARREST**

89. Plaintiff realleges paragraph 1 - 88 as though fully set forth herein.

90. On November 5, 2001, while en route to Egypt via Dulles Airport, Dr. Pourbabai was detained and restricted from exercising his full liberty against his will.

91. Upon information and belief, Defendant was responsible for and intended for Plaintiff to be wrongfully detained.

92. As the events on November 5, 2001 transpired, Plaintiff reasonably believed that he was being detained.

93. Furthermore, Plaintiff feared threat of force as there were police and other airline security in his presence that were armed.

94. Plaintiff was detained for a period of time by force and threat of force.

**COUNT VII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

95. Plaintiff realleges paragraph 1 - 94 as though fully set forth herein.

96. The repeated harassment and hostile work environment endured by Plaintiff as a result of Defendant's conduct including various intimidation tactics was so extreme as to exceed those bounds usually tolerated in a civilized community.

97. As a result Plaintiff experienced both pecuniary and non-pecuniary losses.

**COUNT VIII - WRONGFUL DISCHARGE**

98. Plaintiff realleges paragraph 1 – 97 as though fully set forth herein.

99. Plaintiff's departure from the DOT after Defendant's violations of the Agreement was in violation of the law and public policy.

100. As a result of Defendant's actions, Plaintiff suffered damages, including but not limited to, those described in ¶ 70 above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Ben Pourbabai, respectfully requests this Court grant the following relief:

a. Rule that judgment be entered in Plaintiff's favor for Counts I - VIII.

b. Enter a declaratory judgment that Defendant's actions violated the rights of the Plaintiff by discriminating and retaliating against him in violation of Title VII;

c. Enter a declaratory judgment that Defendant's actions violated the Stipulation of Settlement reached on June 23, 2001 by and between Plaintiff and Defendant;

d. Order Defendant to reinstate Plaintiff with back pay and interest and that Plaintiff is further permitted to proceed with his pre-Stipulation of Settlement EEO Complaints pursuant to 29 C.F.R. 1614.504;

e. Order that Defendant retroactively pays and reimburses Plaintiff all of the monies with interest owed and provide all benefits that Plaintiff should have received, but did not receive, because of Defendant's discriminatory and retaliatory treatment of him.

f. Order that Defendant pay Plaintiff the sum of Three Hundred Thousand Dollars ($300,000.00) plus interest that will compensate Plaintiff for his pain and suffering, and for other non-pecuniary losses that Defendant caused him by discriminating and retaliating against him;

g. Order that Defendant be required to pay an appropriate amount of consequential damages that will compensate Plaintiff for the future opportunities that he lost due to Defendant's discriminatory and retaliatory treatment of him;

h. Order that Defendant pay all of Plaintiff's expenses of litigation, including, reasonable attorney's fees and costs for this action including such attorney's fees and costs that Plaintiff incurred in the processing and litigating of Plaintiff's administrative complaints and breach of contract in this matter;

i. Order any other relief that this Court deem just and proper.

**JURY DEMAND**

The Plaintiff respectfully requests a jury trial on all matters raised herein.

Date: May 8, 2008

Respectfully submitted,

Ben Pourbabai

Frederick A. Douglas, Bar No. 197897
Douglas & Boykin PLLC
1850 M Street, N.W., Suite 640
Washington, D.C. 20036
(202) 776-0370 (telephone)
(202) 776-0975 (facsimile)

# EXHIBIT 1

| | |
|---|---|
| IN RE: EEO COMPLAINTS OF BEN POURBABAI | ) ) ) ) |

## STIPULATION OF SETTLEMENT

IT IS HEREBY stipulated and agreed that and all formal and informal administrative complaints of discrimination filed by Ben Pourbabai (Complainant) prior to the date of execution of this stipulation, including DOT 2-99-2074, 2-00-2003 and 2-00-2004 (the Complaints), and his Individual Right of Action appeal (MSPB Docket No. DC-1221-01-0552-W-1) shall be settled in accordance with the following terms and conditions:

1. Complainant shall continue to encumber the position of Chief Scientific and Technical Advisor for Manufacturing and Quality Assurance Technology (the Position), and perform the duties described in the job description for the position without intimidation or harassment until December 30, 2001. Until that date, Complainant shall focus solely on research and development projects, and will continue to have access to his phone, mail, computer and other resources at the FAA. It is further agreed that, during this period, Complainant's resource requests shall be addressed by Cindy Soffe, the NRS program manager.

2. Effective December 30, 2001, or upon a date sooner if requested in writing by the Complainant, he shall be voluntarily separated from the Federal Aviation Administration (FAA). The FAA documents effecting this separation shall affirmatively indicate in the remarks section that the sole reason for the Complainant's departure from the FAA is his desire to assume more challenging executive responsibilities.

3. On January 2, 2002, Complainant shall receive a payment in the amount of $300,000 payable to Ben Pourbabai and Michael J. Kator.

4. The FAA will purge its records of any performance evaluations and documents critical of Complainant, excluding those documents contained in agency counsel's case file and the agency's Reports of Investigation.

5. Complainant shall identify James Whitlow, Deputy Chief Counsel, as the agency contact point if he wishes to have a future reference from the FAA. Mr. Whitlow shall use the attached reference letter, with proper salutation and date, if he is asked by any individual or organization to either comment or produce a letter

of reference regarding the performance of the Complainant. Mr. Whitlow, on behalf of the agency, will execute Complainant's self-appraisal for 2001, noting that he met expectations. That appraisal will be made immediately available to Complainant.

6. It is expressly understood by the parties that the letter of reference stands as the sole and official position of the FAA with respect to the Complainant's employment. To that end, agency counsel shall inform relevant FAA officials in the offices of the Associate Administrator for Regulation and Certification and the Associate Administrator for Human Resource Management in writing that if FAA is contacted regarding the Complainant's employment with the FAA or background, that employee should refer the inquiry to Mr. Whitlow, or his successor.

7. The Complainant shall receive an award of reasonable attorney fees in the amount of $15,000.

8. In exchange for the above consideration, Complainant agrees to waive any and all claims against the United States government, any agency or department of the United States government, and any officer or employee of the United States government in their official or individual capacity, arising out of the subject matter of any discrimination complaint or appeal filed by the complainant; and further agrees and states that he will not initiate or participate in any action as a party before or in any forum to seek relief for any claim as enumerated above.

9. After execution, a copy of this agreement will be provided to the Department of Transportation's Office of Civil Rights, and the Complaints shall be dismissed with prejudice. It is further agreed that this agreement is confidential and will not be disclosed by the agency or the Complainant other than as required to implement the terms of the agreement or to resolve disputes over compliance, unless compelled to do so by law.

10. The Complaints are voluntarily settled pursuant to 29 CFR Sections 1614.504 and 1614.603 in accordance with the above terms and conditions. If Complainant believes that the agency has failed to comply with the terms of this settlement agreement (i.e., confidentiality of this agreement being compromised), he may, in accordance with 29 CFR Section 1614.504, request either that the terms of the settlement agreement be specifically implemented or that the complaint be reinstated for further processing from the point processing ceased.

11. Complainant hereby withdraws his appeal with prejudice to the Merit Systems Protection Board in Docket No. DC-1221-01-0552-W-1. Complainant shall enter

this agreement into the record of that proceeding, rendering the agreement enforceable by the Board.

12. By executing this agreement, the parties acknowledge that this agreement was the result of negotiations by the parties and is the subject of mutual consideration; and that this agreement was made freely and fairly and was not the result of any duress or bad faith negotiations.

13. This agreement does not constitute either an admission or concession of wrongdoing by either party and will not be represented as such by either party.

14. Complainant states that he is fully aware of the meaning of this document and the consequences of signing it; that he enters into this agreement freely and voluntarily; that he understands and agrees that he will receive no consideration beyond that recited in this agreement; and that no representations or promises by FAA, the Department of Transportation, or any of the agency's officers, employees, agents, attorneys, or other representatives, except those stated in this document, have influenced him in entering into this settlement.

15. The agency and the Complainant agree to be bound by the terms and conditions of this agreement and agree that this settlement constitutes full, entire and final resolution of the Complaints and his appeal.

The parties have executed this agreement on the 23rd day of June 2001.

For the Complainant:

BEN POURBABAI
Chief Scientific and Technical
Advisor for Manufacturing and
Quality Assurance Technology
Federal Aviation Administration

MICHAEL J. KATOR
Counsel for Complainant
Kator, Parks & Weiser

For the Agency:

MARGARET GILLIGAN
Deputy Associate Administrator
for Regulations and Certification
Federal Aviation Administration

PETER J. HANNUMS
Agency Counsel
Federal Aviation Administration